# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR GLOVER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA STATE UNIVERSITY FRESNO, et al.,<br><br>　　　　Defendants. | Case No. 1:15-cv-00152---SAB<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>ECF NO. 15<br><br>and<br><br>ORDER GRANTING MOTION TO AMEND<br><br>ECF NO. 11 |

　　　On June 16, 2015, Defendant California State University Employees Union ("CSUEU") filed a motion to dismiss. (ECF No. 15.) Plaintiff Edgar Glover ("Plaintiff") filed an opposition on July 7, 2015. (ECF No. 24.) CSUEU filed a reply on July 15, 2015. (ECF No. 25.) Both Plaintiff and CSUEU have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 18, 19.)

　　　The hearing on the motion to dismiss took place on July 22, 2015. Jonathan Yank appeared on behalf of CSUEU. Clay Wilkinson appeared on behalf of Plaintiff. For the reasons set forth below, CSUEU's motion to dismiss is granted.

/ / /

/ / /

/ / /

1

# I.

# BACKGROUND

The operative complaint in this matter is the First Amended Complaint filed on May 20, 2015. (ECF No. 7.) The First Amended Complaint names CSUEU, California State University, Fresno ("CSUF"), and Janice A. Parten ("Ms. Parten") as defendants.[1]

Plaintiff alleges that he has worked as a custodian for 27 years. (First Am. Compl. ¶ 9.) In 1990, when Plaintiff was employed by the Fresno Unified School District as a custodian, Plaintiff injured his left knee. (First Am. Compl. ¶ 11.) Plaintiff sustained further injury to his left knee in 1994. (First Am. Compl. ¶ 12.)

On October 24, 1996, Plaintiff began working for CSUF as a custodian and sustained cumulative injuries to his left knee during this time. (First Am. Compl. ¶ 13.) Plaintiff filed a workers' compensation claim against Fresno Unified School District for the cumulative knee injury, but chose not to file a claim against CSUF. (First Am. Compl. ¶ 14.) However, Fresno Unified School District filed a workers' compensation claim against CSUF seeking apportionment of medical costs, temporary disability indemnity, and permanent disability indemnity. (First Am. Compl. ¶ 14.) This resulted in an apportionment of 65% to Fresno Unified School District and 35% to CSUF. (First Am. Compl. ¶ 15.)

On May 29, 1998, Plaintiff received reparative surgery on his left Anterior Cruciate Ligament ("ACL"). (First Am. Compl. ¶ 16.) On April 24, 2009, Plaintiff tore his left ACL while laying canvas flooring in a gymnasium and moving bleachers. (First Am. Compl. ¶ 17.) Plaintiff alleges that CSUF failed to reasonably accommodate Plaintiff's work restrictions. (First Am. Compl. ¶ 18.) After the April 24, 2009 injury, CSUF ordered Plaintiff back to work with no work restrictions and Plaintiff injured his ankle in late May 2009 and was off work until July 2009. (First Am. Compl. ¶ 19.) Plaintiff returned to work with no restrictions. (First Am. Compl. ¶ 19.)

On August 19, 2009, Plaintiff received a letter from CSUF's Associate Director of Plan Operations notifying Plaintiff that he was off work until his work limitations can be

---

[1] CSUF and Ms. Parten have not yet made an appearance through a responsive pleading in this action.

1 accommodated. (First Am. Compl. ¶ 20.) Plaintiff contends that CSUF made no attempt to reasonably accommodate Plaintiff or provide an "interactive process." (First Am. Compl. ¶ 20.) From August 2009 and June 2011, Plaintiff intermittently received temporary disability benefits, non-industrial disability insurance payments, and placed on unpaid medical leave. (First Am. Compl. ¶ 21.)

In June 2011, CSUF began to engage in an interactive process with Plaintiff, but continued to demand prolonged squatting and kneeling from Plaintiff. (First Am. Compl. ¶ 24.) On June 6, 2011, Plaintiff sustained a right ankle injury, which Plaintiff alleges was likely the result of Plaintiff shifting weight to his right leg to avoid strain on the left leg. (First Am. Compl. ¶ 25.)

On August 1, 2011, Plaintiff underwent left knee replacement as a result of his cumulative injuries. (First Am. Compl. ¶ 27.) Between August 2011 and April 2012, Plaintiff was intermittently on industrial disability leave and temporary disability. (First Am. Compl. ¶ 28.) All benefit payments to Plaintiff ceased on March 31, 2012. (First Am. Compl. ¶ 29.) On November 12, 2012, CSUF held a meeting with Plaintiff where Plaintiff was pressured to accept an early retirement. (First Am. Compl. ¶ 31.) Ms. Parten was present at the November 12, 2012 meeting and told Plaintiff that Plaintiff needed to accept an early retirement if he wanted to receive any benefits. (First Am. Compl. ¶ 31.)

Plaintiff further alleges that he was a dues-paying member of CSUEU during all times relevant to the complaint. (First Am. Compl. ¶ 32.) Plaintiff alleges that CSUEU either failed to represent Plaintiff's interest by not being present, or failed to adequately represent Plaintiff's interest. (First Am. Compl. ¶ 33.) Plaintiff ultimately accepted an early retirement that went into effect on July 2013. (First Am. Compl. ¶ 34.)

Plaintiff brings ten claims in his First Amended Complaint: 1) a claim against CSUF under § 504 of the Rehabilitation Act, 2) a claim against CSUF under the Americans with Disabilities Act, 3) a claim against Ms. Parten under 42 U.S.C. § 1983 (Fourteenth Amendment/Procedural Due Process), 4) a claim against Ms. Parten under 42 U.S.C. § 1983 (Fourteenth Amendment/Substantive Due Process), 5) a claim against CSUF under California's

Fair Employment and Housing Act, 6) a claim against CSUEU for breach of contract, 7) a claim against CSUEU and CSUF for breach of contract, 8) a claim against CSUF for constructive discharge in violation of public policy, 9) a claim against CSUF under the California Labor Code, and 10) a claim against CSUF for violation of California Business and Professions Code § 17200.

## II.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.

## III.

## DISCUSSION

CSUEU argues that this Court lacks jurisdiction over Plaintiff's breach of contract claims because PERB possesses exclusive jurisdiction over these claims.  For the reasons set forth below, the Court finds that the Sixth Claim for breach of contract is preempted.  Further, although the Court finds that the Seventh Claim for breach of contract may not be preempted, it nonetheless fails to state a cognizable claim against CSUEU.

**A.    Plaintiff's Sixth Claim for Breach of Contract is Barred by the California Higher Education Employer-Employee Relations Act**

CSUEU argues that Plaintiff's causes of action for breach of contract fails because Plaintiff's relationship with CSUEU is governed by the California Higher Education Employer-

4

Employee Relations Act ("HEERA"), California Government Code §§ 3560, et seq. CSUEU further argues that HEERA imposes upon CSUEU a duty to represent its employees. CSUEU contends that a violation of that duty falls within the exclusive jurisdiction of the California Public Employment Relations Board ("PERB").

The scope and legislative history of HEERA is summarized in Anderson v. California Faculty Assn., 25 Cal. App. 4th 207, 211-212 (1994):

> "Over the past 20 years, the California Legislature has enacted a series of legislative measures granting public employees, at both the state and local level, a variety of organizational and negotiating rights somewhat analogous to the rights long afforded most employees in the private sector by the federal labor relation laws of the 1930's." [Citation.]
>
> In 1979, the Legislature added the Higher Education Employer–Employee Relations Act ("HEERA") which is codified at section 3560 et seq. of the Government Code. The Legislature declared that the act was based on the "fundamental interest in the development of harmonious and cooperative labor relations between public institutions of higher education and their employees." [Citation.] HEERA is to be administered by the Public Employment Relations Board ("PERB"). [Citation.]
>
> In administering HEERA, PERB has certain rights, powers, duties and responsibilities, including, but not limited to, investigating unfair practice charges, holding hearings, subpoenaing witnesses, administering oaths, taking testimony or deposition of any person, issuing subpoenas duces tecum, and, bringing an action in a court of competent jurisdiction to enforce any of its orders, decisions or rulings. [Citation.]
>
> The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of HEERA, is a matter within the exclusive jurisdiction of PERB. [Citation.]
>
> The union's duty of fair representation is defined in HEERA and the breach of that duty is listed as an unfair practice over which PERB has exclusive jurisdiction. Section 3578 states: "The employee organization recognized or certified as the exclusive representative shall represent all employees in the unit, fairly and impartially. A breach of this duty shall be deemed to have occurred if the employee organization's conduct in representation is arbitrary, discriminatory, or in bad faith."

Pertinent to this Court's analysis, "[b]ecause the duty of fair representation is defined in HEERA as an unfair practice claim, PERB has exclusive jurisdiction over any such dispute." Id. at 212 (citing Los Angeles Council of School Nurses v. Los Angeles Unified School Dist., 113

Cal. App. 3d 666, 672 (1980)).  In Anderson, the Court addressed the issue of whether the PERB has exclusive jurisdiction in a "hybrid" case—where an employee brought a breach of contract claim against an employer as well as a claim for unfair representation against the union.  Id. at 213.  The court held that in such cases, the PERB retains its exclusive jurisdiction over the unfair representation claim.  Id. at 220.

CSUEU argues that Plaintiff cannot avoid PERB's exclusive jurisdiction by characterizing his unfair representation claim as one for breach of contract.  CSUEU cites Adkins v. Mireles, 526 F.3d 531, 540 (9th Cir. 2008), for the proposition that an employee's breach of contract claim is preempted by federal labor laws imposing a statutory duty of fair representation on union representatives.  "[W]e conclude that the district court did not err in finding that the statutory duty of fair representation displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."  Id. (citing United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 374 (1990).

Although Adkins involved preemption of federal labor law over state law, CSUEU contends that the same principles apply in this context because California applies the same preemption doctrine developed by federal courts with respect to the National Labor Relations Act when determining the scope of PERB's exclusive jurisdiction.  In El Rancho Unified School Dist. v. National Education Assn., 33 Cal. 3d 946, 953 (1983), the Supreme Court of California acknowledged that "the principles defining the preemptive reach of the NLRA are generally applicable in determining the scope of PERB's preemptive jurisdiction under EERA[2]."  In determining whether PERB possesses exclusive jurisdiction over a controversy presented to a court, "[the] question is 'whether the controversy presented to the state court is identical to ... or different from ... that which could have been ... presented' to PERB."  Id. at 956 (quoting Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 197 (1978)).

In El Rancho, the court held that PERB had exclusive jurisdiction to determine whether a

---

[2] The Education Employment Relations Act governs labor relations between public school districts and their employees.

1  teachers' strike was an unfair labor practice and therefore a school district's tort claims brought
2  in state court were preempted. El Rancho Unified School Dist., 33 Cal. 3d at 960-61.  In Paulsen
3  v. Local No. 856 of Intern. Broth. of Teamsters, 193 Cal. App. 4th 823, 835 (2011), the court
4  held that tort causes of action which "are in essence the same as the duty of fair representation
5  claim" fall within the PERB's exclusive initial jurisdiction.

6       Following El Rancho and Paulsen, the Court finds that the breach of contract claim raised
7  by Plaintiff against CSUEU in the sixth claim is identical to a breach of the duty of fair
8  representation claim presented to PERB and, therefore, this Court lacks jurisdiction over the
9  breach of contract claims.  Plaintiff's sixth claim for breach of contract alleges that CSUEU
10 owed Plaintiff a duty to represent Plaintiff in negotiations with Plaintiff's employer and advocate
11 competently on Plaintiff's behalf.  Plaintiff alleges that CSUEU breached this duty.  This claim
12 is, in essence, a claim that CSUEU breached its duty of fair representation.

13      Plaintiff argues that preemption does not apply because an express provision of a
14 collective bargaining agreement or collateral contract may impose duties above and beyond the
15 duty of fair representation imposed by statute.  While this may be true in theory, Plaintiff fails to
16 identify an express provision of a collective bargaining agreement or collateral contract that
17 imposes any duties beyond the duty of fair representation.  Plaintiff attempts to characterize a
18 "duty of advocacy flowing from a collateral contract with the union."  However, Plaintiff makes
19 no attempt to explain how this "duty of advocacy" is in any way distinguishable from the duty of
20 fair representation.  Without elaboration, Plaintiff's "duty of advocacy" appears to be identical to
21 HEERA's duty of fair representation.

22      Plaintiff also argues that Plaintiff's claims are not preempted because PERB does not
23 have jurisdiction to award damages.  Plaintiff's assertion that PERB cannot award damages is
24 false.  California Government Code § 3563.3 states that PERB has the power to "take such
25 affirmative action, **including but not limited to**, the reinstatement of employees with or without
26 back pay, as will effectuate the policies of this chapter..." (emphasis added).  Nothing in Section
27 3563.3 suggests that PERB cannot award damages.  Further, Plaintiff fails to cite any authority
28 that suggests that preemption does not apply to claims involving damages.

7

Based upon the foregoing, the Court finds that Plaintiff's sixth claim for breach of contract is preempted and this Court lacks jurisdiction over this claim. Since the Court finds that it lacks jurisdiction over the sixth claim for breach of contract against CSUEU, the Court declines to address CSUEU's argument that the claim is barred by the statute of limitations.

### B. Plaintiff's Seventh Claim for Breach of Contract Based Upon the Shift Differential Provision Fails to State a Claim

Plaintiff's seventh claim for breach of contract alleges that CSUEU and CSUF entered into written contracts governing the relationship between CSUF and CSUEU members. Plaintiff further alleges that these contracts set forth the rate of compensation for CSUEU members, including the provision of a shift differential, i.e., extra compensation for working undesirable shifts. Plaintiff alleges that his shift differential was not taken into account when CSUF calculated Plaintiff's benefits. Plaintiff argues that preemption does not apply to this claim because the provision of shift differential constitutes a duty above and beyond the duty of fair representation and therefore does not constitute an unfair labor practice.

Assuming without deciding that preemption does not apply to Plaintiff's seventh claim for breach of contract, Plaintiff's claim nonetheless fails because Plaintiff fails to allege facts which demonstrate how CSUEU can be held liable for CSUF's breach of the duty to provide a shift differential.

Plaintiff argues that he may sue CSUEU under this theory because he qualifies as a third party beneficiary of the collective bargaining agreement. While this may be true, Plaintiff nonetheless fails to demonstrate how CSUEU can be held liable for CSUF's breach of this agreement. Plaintiff fails to identify any provision in the collective bargaining agreement which creates any rights directly enforceable by individual employees against CSUEU. Instead, Plaintiff has identified a provision in the collective bargaining agreement which creates a duty on the part of CSUF. Plaintiff may not sue CSUEU for a breach of contract committed by CSUF on a promise CSUF made to CSUEU. See United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 375 (1990). Plaintiff fails to cite any provision of the collective bargaining agreement which suggests that CSUEU held a special duty to ensure employees were

properly paid shift differentials.

Plaintiff contends that CSUEU and CSUF should be held jointly and severally liable for the breach of the shift differential provision under California Civil Code § 1659. Section 1659 states that "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." However, CSUEU and CSUF did not "unite in a promise" to pay shift differentials—CSUEU has no obligation under the collective bargaining agreement to pay any employee a shift differential. The shift differential provision is solely the responsibility of CSUF.

Based upon the foregoing, the Court finds that Plaintiff's seventh claim for breach of contract fails to state a cognizable claim against CSUEU.[3] Since the Court finds that Plaintiff's seventh claim for breach of contract fails to state a cognizable claim, the Court declines to address CSUEU's argument that the claim is barred by the statute of limitations.

### C. Leave to Amend

Generally, leave to amend shall be freely given when justice so requires. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" Id. (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. Id. at 1051-52 Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. Id. at 1052. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Id. at 1052 (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)).

In this case, Plaintiff filed a motion seeking leave to amend on May 27, 2015. (ECF No.

---

[3] CSUF has not yet made an appearance in this action and the Court's analysis is strictly limited to the viability of the claim against CSUEU. The claim against CSUF remains intact.

11.) The motion is unopposed. The motion seeks leave to amend to correct the name for Defendant California State University, Fresno and change it to Defendant Board of Trustees of the California State University. The Court will grant leave to amend the complaint for this purpose.

With respect to the claims against CSUEU, the Court will tentatively grant leave to amend these claims to the extent that new or different facts can be alleged to render the claims cognizable. To the extent that Plaintiff can allege facts that demonstrate that a contract existed wherein CSUEU promised to fulfill some obligation beyond the statutory duty of fair representation, the Court will grant Plaintiff leave to amend the complaint to allege facts that demonstrate the existence of such contractual obligations. Similarly, to the extent that Plaintiff can allege facts that demonstrate that CSUEU made promises guaranteeing CSUF's payment of shift differential benefits, the Court will grant Plaintiff leave to amend the complaint to identify those contractual terms. Although nothing in the excerpts of the collective bargaining agreement suggest that terms supporting any of these theories exist, the Court notes that Plaintiff only submitted excerpts of the collective bargaining agreement with their First Amended Complaint.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court grants Defendant CSUEU's motion to dismiss. The Court will grant Plaintiff leave to amend the complaint to cure the deficiencies identified herein.

//
//
//
//
//
//
//
//
//

The Court further grants Plaintiff's motion to amend for the purpose of correct Defendant CSUF's name in the record.

Accordingly, it is HEREBY ORDERED that:

1. Defendant CSUEU's motion to dismiss is GRANTED;
2. Plaintiff's sixth claim for breach of contract and seventh claim for breach of contract against Defendant CSUEU are DISMISSED with leave to amend; and
3. Plaintiff's May 27, 2015 motion to amend is GRANTED. Plaintiff shall file a Second Amended Complaint on or before August 12, 2015.

IT IS SO ORDERED.

Dated: __**July 24, 2015**__              _____
                                          UNITED STATES MAGISTRATE JUDGE

11