# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR GLOVER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA STATE UNIVERSITY FRESNO, et al.,<br><br>　　　　Defendants. | Case No. 1:15-cv-00152-SAB<br><br>ORDER GRANTING DEFENDANT CSUEU'S MOTION TO DISMISS AND DISMISSING PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST CSUEU WITHOUT LEAVE TO AMEND<br><br>ECF No. 33 |

On August 31, 2015, Defendant California State University Employees Union ("CSUEU") filed a motion to dismiss. (ECF No. 33.) Plaintiff Edgar Glover ("Plaintiff") filed an opposition on September 16, 2015. (ECF No. 36.) CSUEU filed a reply on September 23, 2015. (ECF No. 38.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 18, 19, 31.)

The Court finds it appropriate for CSUEU's motion to dismiss to be submitted upon the record and briefs on file without need for oral argument. See Local Rule 230(g). Accordingly, the hearing scheduled for September 30, 2015 will be vacated. For the reasons set forth below, CSUEU's motion to dismiss is granted and Plaintiff's breach of contract claim against CSUEU is dismissed without leave to amend.

/ / /

1

# I.

# BACKGROUND

The operative complaint in this matter is the Second Amended Complaint filed on August 12, 2015. (ECF No. 29.) The Second Amended Complaint names CSUEU, the Board of Trustees of the California State University ("CSUF"), and Janice A. Parten ("Ms. Parten") as defendants.[1]

Plaintiff alleges that he has worked as a custodian for 27 years. (Second Am. Compl. ¶ 9.) In 1990, when Plaintiff was employed by the Fresno Unified School District as a custodian, Plaintiff injured his left knee. (Second Am. Compl. ¶ 11.) Plaintiff sustained further injury to his left knee in 1994. (Second Am. Compl. ¶ 12.)

On October 24, 1996, Plaintiff began working for CSUF as a custodian and sustained cumulative injuries to his left knee during this time. (Second Am. Compl. ¶ 13.) Plaintiff filed a workers' compensation claim against Fresno Unified School District for the cumulative knee injury, but chose not to file a claim against CSUF. (Second Am. Compl. ¶ 14.) However, Fresno Unified School District filed a workers' compensation claim against CSUF seeking apportionment of medical costs, temporary disability indemnity, and permanent disability indemnity. (Second Am. Compl. ¶ 15.) This resulted in an apportionment of 65% to Fresno Unified School District and 35% to CSUF. (Second Am. Compl. ¶ 15.)

On May 29, 1998, Plaintiff received reparative surgery on his left Anterior Cruciate Ligament ("ACL"). (Second Am. Compl. ¶ 16.) On April 24, 2009, Plaintiff tore his left ACL while laying canvas flooring in a gymnasium and moving bleachers. (Second Am. Compl. ¶ 17.) Plaintiff alleges that CSUF failed to reasonably accommodate Plaintiff's work restrictions. (Second Am. Compl. ¶ 18.) After the April 24, 2009 injury, CSUF ordered Plaintiff back to work with no work restrictions and Plaintiff injured his ankle in late May 2009 and was off work until July 2009. (Second Am. Compl. ¶ 19.) Plaintiff returned to work with no restrictions. (Second Am. Compl. ¶ 19.)

///

---

[1] CSUF and Ms. Parten have not yet filed a responsive pleading in this action.

On August 19, 2009, Plaintiff received a letter from CSUF's Associate Director of Plan Operations notifying Plaintiff that he was off work until his work limitations can be accommodated. (Second Am. Compl. ¶ 20.) Plaintiff contends that CSUF made no attempt to reasonably accommodate Plaintiff or provide an "interactive process." (Second Am. Compl. ¶ 20.) From August 2009 and June 2011, Plaintiff intermittently received temporary disability benefits, non-industrial disability insurance payments, and placed on unpaid medical leave. (Second Am. Compl. ¶ 21.)

In June 2011, CSUF began to engage in an interactive process with Plaintiff, but continued to demand prolonged squatting and kneeling from Plaintiff. (Second Am. Compl. ¶ 24.) On June 6, 2011, Plaintiff sustained a right ankle injury, which Plaintiff alleges was likely the result of Plaintiff shifting weight to his right leg to avoid strain on the left leg. (Second Am. Compl. ¶ 25.)

On August 1, 2011, Plaintiff underwent left knee replacement as a result of his cumulative injuries. (Second Am. Compl. ¶ 27.) Between August 2011 and April 2012, Plaintiff was intermittently on industrial disability leave and temporary disability. (Second Am. Compl. ¶ 28.) All benefit payments to Plaintiff ceased on March 31, 2012. (Second Am. Compl. ¶ 29.) On November 12, 2012, CSUF held a meeting with Plaintiff where Plaintiff was pressured to accept an early retirement. (Second Am. Compl. ¶ 31.) Ms. Parten was present at the November 12, 2012 meeting and told Plaintiff that Plaintiff needed to accept an early retirement if he wanted to receive any benefits. (Second Am. Compl. ¶ 31.)

Plaintiff further alleges that he was a dues-paying member of CSUEU during all times relevant to the complaint. (Second Am. Compl. ¶ 32.) Plaintiff alleges that Joanne Sanchez-Juarez was CSUEU's representative assigned to represent Plaintiff at the November 12, 2012 meeting. (Second Am. Compl. ¶ 33.) Plaintiff contends that, before the meeting, Ms. Sanchez-Juarez promised Plaintiff that he would receive a work assignment with reasonable accommodations, stating: "Don't worry about it Edgar, you're going to go back to work" and "you're going to get your job back." (Second Am. Compl. ¶ 34.)

///

Plaintiff alleges that CSUEU either failed to represent Plaintiff's interest by not being present, or failed to adequately represent Plaintiff's interest. (Second Am. Compl. ¶ 35.) Plaintiff ultimately accepted an early retirement that went into effect on July 2013. (Second Am. Compl. ¶ 36.)

Plaintiff brings nine claims in his Second Amended Complaint: 1) a claim against CSUF under § 504 of the Rehabilitation Act, 2) a claim against CSUF under the Americans with Disabilities Act, 3) a claim against Ms. Parten under 42 U.S.C. § 1983 (Fourteenth Amendment/Procedural Due Process), 4) a claim against Ms. Parten under 42 U.S.C. § 1983 (Fourteenth Amendment/Substantive Due Process), 5) a claim against CSUF under California's Fair Employment and Housing Act, 6) a claim against CSUEU for breach of contract, 7) a claim against CSUF for constructive discharge in violation of public policy, 8) a claim against CSUF under the California Labor Code, and 9) a claim against CSUF for violation of California Business and Professions Code § 17200.

## II.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

/ / /

/ / /

/ / /

## III.

## DISCUSSION

CSUEU argues that this Court lacks jurisdiction over Plaintiff's breach of contract claims because PERB possesses exclusive jurisdiction over these claims. CSUEU also argues that Plaintiff's new allegations regarding the promises made by Ms. Sanchez-Juarez did not create any enforceable contractual obligations because of a lack of consideration. CSUEU further argues that Plaintiff cannot rely on a theory based upon promissory estoppel because Plaintiff has not alleged detrimental reliance. Finally, CSUEU argues that Plaintiff's claims against CSUEU should be dismissed because they are barred by the applicable statute of limitations.

### A.   Plaintiff's Claim for Breach of Contract Against CSUEU is Barred by the California Higher Education Employer-Employee Relations Act

CSUEU argues that Plaintiff's breach of contract claim against CSUEU fails because, under the California Higher Education Employer-Employee Relations Act ("HEERA"), the California Public Employment Relations Board ("PERB") possesses exclusive jurisdiction over Plaintiff's claim. In the Court's prior order on CSUEU's first motion to dismiss, the Court found that PERB did possess exclusive jurisdiction over the breach of contract claims raised in the First Amended Complaint, but granted Plaintiff leave to amend.

In granting the prior motion to dismiss, the Court recognized that under HEERA, PERB has exclusive jurisdiction over any claims for breach of the duty of fair representation. Anderson v. California Faculty Assn., 25 Cal. App. 4th 207, 211-212 (1994). Furthermore, PERB has exclusive jurisdiction over a breach of contract claim which presents a controversy identical to a duty of fair representation claim that could have been presented to PERB. See Adkins v. Mireles, 526 F.3d 531, 540 (9th Cir. 2008); El Rancho Unified School Dist. v. National Education Assn., 33 Cal. 3d 946, 953 (1983).

In the order on the prior motion to dismiss, the Court recognized that preemption may not apply if Plaintiff had raised a breach of contract claim based upon the breach of a duty above and beyond the duty of fair representation under HEERA. However, the Court held that Plaintiff had not identified any such collateral duty in the First Amended Complaint. The Court granted leave

1  to file a Second Amended Complaint which identified such a "collateral" contractual duty.

2  Plaintiff's Second Amended Complaint alleges that a collateral contractual duty was
3  created when, prior to a November 12, 2012 meeting with CSUF, Ms. Sanchez-Juarez promised
4  Plaintiff that he would receive a work assignment with reasonable accommodations.  Plaintiff
5  argues that this promise created a collateral contract and the breach of this collateral contractual
6  duty constitutes and independent breach of contract claim which falls outside the exclusive
7  jurisdiction of the PERB.

8  However, the Court finds that the Second Amended Complaint does not state sufficient
9  facts to support a plausible claim that Ms. Sanchez-Juarez's statements prior to the November
10 12, 2012 constitutes a collateral contract which imposed contractual duties above and beyond the
11 duty of fair representation imposed under HEERA.  Pertinent to the Court's analysis, the Court
12 notes that, while the Court must accept all factual allegations in the Second Amended Complaint
13 as true, the Court is not bound to accept as true a legal conclusion couched as a factual
14 allegation.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and
15 conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.

16 Plaintiff's allegations regarding the existence of a contract between Plaintiff and CSUEU
17 which encompassed the oral promises made by Ms. Sanchez-Juarez prior to the November 12,
18 2012 are mere labels and conclusions and a formulaic recitation of the elements of a cause of
19 action for breach of contract.  In particular, there appears to be little factual matter supporting the
20 conclusion that an enforceable contract existed regarding Ms. Sanchez-Juarez's oral statements
21 prior to the November 12, 2012 meeting.  Plaintiff offers no factual allegations whatsoever
22 regarding how such a contract was created or what the precise terms of any such contract were.
23 It is unclear if Plaintiff contends that a contract existed prior to the November 12, 2012 incident
24 or whether Ms. Sanchez-Juarez's promises created a new, independent contract.

25 In the absence of further factual allegations, it seems implausible that any contract existed
26 between Plaintiff and CSUEU whereby CSUEU promised Plaintiff that any future oral promises
27 made by Ms. Sanchez-Juarez became legally enforceable contractual duties.  Accordingly, the
28 Second Amended Complaint does not raise a plausible breach of contract claim based on the

theory of a preexisting contract between Plaintiff and CSUEU that somehow encompassed the promises made by Ms. Sanchez-Juarez on November 12, 2012.

The Court further finds that the Second Amended Complaint does not raise a plausible breach of contract claim based upon the theory that Ms. Sanchez-Juarez's promises on November 12, 2012 created a new contract between CSUEU and Plaintiff. Under California law, the formation of a legal contract requires 1) parties capable of contracting, 2) their consent, 3) a lawful object, and 4) a sufficient cause or consideration. Cal. Civ. Code § 1550. CSUEU notes that no contract could have been created by Ms. Sanchez-Juarez due to a lack of consideration given by Plaintiff. The Court agrees. Plaintiff argues that Plaintiff's continued payment of union dues was adequate consideration for CSUEU's promises. However, Plaintiff was obligated to pay union dues prior to Ms. Sanchez-Juarez's statements on November 12, 2012. Plaintiff does not allege that his union dues increased or changed as a consequence of Ms. Sanchez-Juarez's promises to obtain reasonable accommodations for Plaintiff. Accordingly, Plaintiff's payment of union dues cannot serve as consideration for a new contract because a promise to perform a preexisting legal duty is not supported by consideration. U.S. Ecology, Inc. v. State of California, 92 Cal. App. 4th 113, 129 (2001) (citing Bailey v. Breetwor, 206 Cal. App. 2d 287, 291-92 (1962)).

In sum, the Court finds that any breach of contract claim raised by Plaintiff regarding CSUEU's breach of the duty of fair representation is preempted by HEERA and falls within the exclusive jurisdiction of PERB. The Court further finds that Plaintiff's attempt to plead around the preemption issue fails because Plaintiff fails to allege a plausible breach of contract claim based upon Ms. Sanchez-Juarez's promises on November 12, 2012.

### B. Plaintiff's Claim for Promissory Estoppel

CSUEU argues that Plaintiff's "alternative" promissory estoppel theory fails because Plaintiff has not alleged detrimental reliance. Plaintiff's Second Amended Complaint does not assert any claims based upon the theory of promissory estoppel. Accordingly, it is unclear why CSUEU raised the issue in their motion to dismiss. Normally, the Court does not issue advisory opinions: if Plaintiff's Second Amended Complaint does not raise a claim based upon

7

1 promissory estoppel, the Court normally would not rule on whether a hypothetical claim raised in a future pleading would be cognizable. However, since the issue presented is relevant in determining whether Plaintiff should be granted leave to amend, the Court will address the promissory estoppel issue.

California law recognizes a claim under the doctrine of promissory estoppel:

> "In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'"

Toscano v. Greene Music, 124 Cal. App. 4th 685, 692 (2004) (quoting Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority, 23 Cal. 4th 305, 310 (2000)). "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" Id. "Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application." U.S. Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (2005) (citing C & K Engineering Contractors v. Amber Steel Co., 23 Cal. 3d 1, 7-8 (1978)).

California courts also note that the reliance by the plaintiff must be both reasonable and foreseeable. See, e.g., U.S. Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (2005). "'[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance.... "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, ... he will be denied a recovery."'" Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 227 (2011) (quoting Kruse v. Bank of America, 202 Cal. App. 3d 38, 54 (1988)). "A mere 'hopeful expectation [] cannot be equated with the necessary justifiable reliance.'" Id. (quoting Kruse, 202 Cal. App. 3d at 55).

In this case, the Court finds that Plaintiff's alleged reliance on Ms. Sanchez-Juarez's promises was neither reasonable nor foreseeable. Ms. Sanchez-Juarez allegedly promised

Plaintiff that he would go back to work and he would get his job back. First, it is worth noting that Plaintiff has not alleged that Ms. Sanchez-Juarez promised any specific "reasonable accommodation" that would be obtained by Ms. Sanchez-Juarez and CSUEU at the November 12 meeting. It is also worth noting that the Second Amended Complaint is unclear whether Ms. Sanchez-Juarez followed through on her promise to get Plaintiff back to work, as the Second Amended Complaint does not allege that Plaintiff was ever fired by CSUF, it only states that Plaintiff accepted an early retirement. Thus, it is unclear whether Ms. Sanchez-Juarez actually breached any promise to Plaintiff.

Regardless of whether Plaintiff adequately alleged that Ms. Sanchez-Juarez breached a promise to Plaintiff, it was neither reasonable nor foreseeable for Plaintiff to rely on Ms. Sanchez-Juarez's promises as it was clearly impossible for either Plaintiff or Ms. Sanchez-Juarez to make any promises or guarantees with respect to whether CSUF would accede to their demands. It was manifestly unreasonable for Plaintiff to rely on such promises to his detriment. The Second Amended Complaint alleges no facts which suggest that Ms. Sanchez-Juarez had any insider information as to what CSUF was going to do at the November 12 meeting or what accommodations, if any, CSUF would offer to Plaintiff. Ms. Sanchez-Juarez promised an outcome that was clearly outside of her control. A reasonable person would have interpreted Ms. Sanchez-Juarez's statements to Plaintiff prior to the November 12 meeting as mere puffery and encouragement, not as legally binding and enforceable promises. Ms. Sanchez-Juarez's optimistic promises were as reliable as the assurances of an attorney who promises a favorable verdict to their client in an upcoming trial or a fan who promises that the Los Angeles Dodgers are going to win the World Series.

Given the doctrine of promissory estoppel's equitable nature and the wide discretion possessed by the Court in its application, the Court finds that the facts alleged in the Second Amended Complaint and in Plaintiff's opposition are not sufficient to support a claim for promissory estoppel. The Court further finds that Plaintiff's opposition demonstrates that leave to amend would be futile, as Plaintiff cannot allege any set of facts which would support a claim for promissory estoppel in these circumstances. See discussion, infra, Part III.D.

### C. Statute of Limitations

CSUEU argues that Plaintiff's claim against CSUEU are barred by the statute of limitations under HEERA. Since the Court finds that Plaintiff's claim falls within the exclusive jurisdiction of PERB and Plaintiff fails to state any cognizable breach of contract claim against CSUEU for the violation of any collateral contractual duties, the Court need not address CSUEU's statute of limitations argument.

### D. Leave to Amend

Generally, leave to amend shall be freely given when justice so requires. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" Id. (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. Id. at 1051-52. Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. Id. at 1052. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Id. at 1052 (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)).

In this case, the Court previously granted Plaintiff leave to amend and Plaintiff failed to cure the deficiencies identified by the Court in his claims against CSUEU. Furthermore, Plaintiff's opposition to CSUEU's amendment fails to identify any additional factual allegations that could be included in a Third Amended Complaint that would cure the deficiencies in Plaintiff's claims. Accordingly, the Court finds that further leave to amend would be futile. The Court will dismiss Plaintiff's claim against CSUEU without leave to amend.

///

///

///

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court grants Defendant CSUEU's motion to dismiss. The Court further finds that further leave to amend would be futile and therefore dismisses Plaintiff's breach of contract claim against CSUEU without leave to amend.

Accordingly, it is HEREBY ORDERED that:

1. Defendant CSUEU's motion to dismiss is GRANTED;

2. Plaintiff's sixth claim for breach of contract against Defendant CSUEU is DISMISSED without leave to amend; and

3. The hearing on CSUEU's motion to dismiss set for September 30, 2015 is VACATED and the parties are not required to appear at that time.

IT IS SO ORDERED.

Dated:   **September 28, 2015**

UNITED STATES MAGISTRATE JUDGE